503 So.2d 25 (1986)
FRADELLA CONSTRUCTION, INC. and John Fradella
v.
Robert ROTH.
FRADELLA CONSTRUCTION, INC. and John Fradella
v.
Joseph ACCARDO and Ferd Cerruit.
FRADELLA CONSTRUCTION, INC. and John Fradella
v.
Jerome M. WINSBERG, Raymond Cuccio, Sr., and Eddie Sapir.
FRADELLA CONSTRUCTION, INC. and John Fradella
v.
Armand BAUCK and Gerald Berel.
FRADELLA CONSTRUCTION, INC. and John Fradella
v.
Kathleen GLASS, Buddy La Rocca and Barry Whittaker.
Nos. CA-5400 to CA-5404.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1986.
Rehearing Denied March 19, 1987.
William M. Detweiler, New Orleans, for plaintiff.
Kerry P. Cuccia, New Orleans, for defendants.
Before BARRY, BYRNES and LOBRANO, JJ.
BARRY, Judge.
Fradella Construction, Inc., appeals an adverse judgment rendered on various Rules for Possession seeking to evict a number of camp owners due to various factual occurrences.
Fradella Construction bought 320 acres of land and water bottom from Mr. and Mrs. Andrew Garcia who had under lease several small parcels to people who built camps above the waters of Lake Pontchartrain. After the sale Fradella Construction unsuccessfully attempted to negotiate new *26 leases, then sent notices to vacate. The camp owners did not leave so Rules for Possession were filed.
The defendants answered alleging Fradella Construction could not assert title to the land on which the camps were located since it was water bottoms not susceptible to private ownership. Robert Roth and Joseph Accardo testified they owned their camps and were not leasing the lake bottom under the camps, rather the lease was for the adjacent land where they parked their cars and for use of the road.
Fradella Construction's president, John Fradella, claimed he purchased the lake bottom from the Garcias and pointed out that the leases permitted each owner to sell and remove the camp structure.
The court ruled in Fradella Construction's favor by "condemning said occupants to vacate that property other than the lake bottom or `camps' thereon, subject to public right of passage to the lake bottom, in this city, within twenty-four hours." In his Reasons for Judgment the judge noted the serious questions of ownership involved here:
Here, not only is there a legitimate issue as to whether or not the movers herein owned the property from which they are seeking to evict the tenants, but there is a substantial question as to whether or not the bottoms of a lake are subject to private ownership.
With regard to the above question, it is the ruling of this court that it does not have jurisdiction over those sites on the lake bottom as there exists a legitimate issue of ownership thereto. If this court does have jurisdiction, then there is little doubt but that the movers herein do not own or have `title' to the immovable property under the lake.
However, it is clear that the movers herein did purchase some property. As there appears to be no question of the movers ownership to said property other than the lake bottom, then clearly they have a right of possession to said property. However, said right of possession is subject to the public `right of passage' to the lake bottom.
Fradella Construction's appeal claims the camp owners had no right to question ownership in an eviction proceeding and argues that First City Court did not have jurisdiction to grant a right of passage since title questions are within the purview of the district court. Fradella Construction asks that the eviction be upheld and the right of passage be reversed.
A brief (filed by defendants Sapir, Winsberg, Cuccia) contends the camps are situated on the lake bed which is not subject to private ownership. Similar arguments were made by all of the defendants in the lower court. The appellate brief also argues that the area of land containing walkways, waterpumps and utility lines is part of the public seashore and the right of passage (a predial servitude) gives the camp owners necessary access to their camps which are enclosed estates. The defendants claim the judgment is correct.
City courts have limited jurisdiction. La. C.C.P. Arts. 4832, 4841. They have jurisdiction over eviction proceedings if the annual rental is eighteen thousand dollars or less. La.C.C.P. Art. 4845. See generally Maraist, A New Look in Courts of Limited Jurisdiction, La.Bar J. 139-142 (1981).
Summary eviction proceedings are aimed at sparing the owner the burden and delay of bringing a petitory action. La.C.C.P. Art. 4701 et seq.; Todt v. Santani, 167 So.2d 475 (La.App. 4th Cir.1964); Ryan v. Barthelmy, 32 So.2d 467 (La.App.Orl.1947); Duvic v. Home Finance Service, 23 So.2d 790 (La.App.Orl.1945). Eviction is the proper remedy for use by an owner of immovable property to evict an occupant therefrom after the purpose of the occupancy has ceased. La.C.C.P. Art. 4702. Champagne v. Broussard, 401 So.2d 1060 (La.App. 3rd Cir.1981), writ denied 409 So.2d 615 (La.1981).
The eviction procedure shall not be construed to conflict with the articles relating to actions to determine ownership or possession, La.C.C.P. Arts. 3651-3664. La. C.C.P. Art. 4705; Rankin v. Garland, 392 So.2d 182 (La.App. 2d Cir.1980). Summary eviction procedure is not appropriate to try *27 disputed title to property. Foreman v. Luquette, 344 So.2d 1111 (La.App. 3rd Cir. 1977). After possessory litigation has been completed in favor of the landowner, eviction by summary proceedings can then be accomplished. Skannal v. Jones, 384 So.2d 494 (La.App. 2d Cir.1980).
No petitory action had been filed. There is a district court judgment which dismisses a petition for an injunction filed by some of the camp owners. The camp owners argue no person can assert title to the lake bottom.
According to La.C.C. Art. 451 seashore is the space of land over which the waters of the sea spread at highest tide during the winter season. The word sea applies to the Gulf of Mexico and to "arms of the sea." Lake Pontchartrain has been classified as an arm of the sea. Zeller v. Southern Yacht Club, 34 La.Ann. 837 (1882). Seashore is a public thing owned by the State. La.C.C. Art. 450. Lands that have become sea bottoms as well as accretions formed at a seashore belong to the State.
The State owns the bottom of navigable lakes up to the ordinary high water mark of 1812. 2 Yiannopoulos, Civil Law Treatise: Property §§ 44, 48 (2d Ed.1980). See also State v. Placid Oil Company, 300 So.2d 154 (La.1973) (on rehearing), cert. denied 419 U.S. 1110, 95 S.Ct. 784, 42 L.Ed.2d 807 (1975); State v. Aucoin, 206 La. 787, 20 So.2d 136 (1944); Miami Corporation v. State, 186 La. 784, 173 So. 315 (1936), cert. denied 302 U.S. 700, 58 S.Ct. 19, 82 L.Ed. 541 (1937).
The extent of Fradella Construction's ownership should be clarified in a petitory action. Since the facts before us do not support a summary eviction under La.C.C.P. Art. 4702, First City Court did not have jurisdiction. Lack of subject matter jurisdiction can be noticed at any time even by a court on its own motion. La.C. C.P. Art. 925; Louisiana Power and Light Company v. City of Houma, 229 So.2d 202 (La.App. 1st Cir.1969), writ refused 254 La. 1165, 229 So.2d 350 (1969).
Subject matter jurisdiction cannot be conferred by consent of the parties. A judgment by a court without subject matter jurisdiction is void. La.C.C.P. Art 3; Succession of Guitar, 197 So.2d 921 (La.App. 4th Cir.1967).
The judgment is annulled and set aside.
ANNULLED.
LOBRANO, J., concurs.
LOBRANO, Judge, concurring.
Ordinarily the question of ownership cannot be raised in a summary eviction proceedings. However, in this case where there is serious issue as to Fradella Construction Co.'s ownership of the waterbottoms of Lake Ponchartrain, I agree that matter should be litigated in the district court.
Appellees have also raised the issue of their right to use certain land areas adjacent to the lake. This issue is predicated on a question of whether a servitude exists by virtue of use, or by operation of law. See C.C. Arts. 452, 689, 740 and 742. The First City court does not have jurisdiction to decide these matters in a summary eviction proceeding.